```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| RAHEEN BRITTINGHAM, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil No. 07-190 (JBS/AMD) |
| CITY OF CAMDEN, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Michael D. Pomerantz, Esq.
LAW OFFICES OF JOSEPH M. MARRONE
1525 Locust Street, 12th Floor
Philadelphia, PA 19102
    Attorney for Plaintiff

John C. Connell, Esq.
John P. Kahn, Esq.
Maureen T. Coghlan, Esq.
ARCHER & GREINER, P.C.
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033-0968
    Attorneys for the Defendants

**SIMANDLE**, District Judge:

## I. INTRODUCTION

This matter is before the Court on Defendant's June 1, 2009 motion for reconsideration pursuant to Local Civil Rule 7.1(i)[Docket Item 68]. Defendant DeCosmo, an officer with the Camden County Prosecutor's Office, contends that the court erred in denying him summary judgment on his state law immunity from an assault and battery claim arising out of a shooting incident. Because Defendant fails to identify any previously presented area

of controlling law or material fact overlooked by the Court, the motion is denied.

**II. BACKGROUND**

A brief summary of the relevant factual allegations follows. A fuller account of the parties' competing narratives in this case can be found in this Court's opinion on the motion for summary judgment [Docket Item 65]. On the evening of April 8, 2006, Defendant DeCosmo of the Camden County Prosecutor's Office and Officer John Kemp of the Camden Police Department responded to several 911 calls at different locations about groups of girls fighting in the streets, possibly with guns and/or knives. One such call led them to Phillips Street and ultimately led Officer DeCosmo into an apartment in which he shot Plaintiff in the shoulder.

Beyond these basic facts, the details of the night's events are in dispute. It is important to emphasize here that the Court is not evaluating the allegations of either Party for credibility, nor drawing any conclusions about the truth of what happened that night. The Court is merely assessing whether there are any genuine factual disputes over material issues. For that purpose, the competing versions of the facts are described below.

Plaintiff claims that he came to the scene on Phillips Street to help end the fighting in which his sister was involved.

He had succeeded in doing so when the police arrived. Then, after the arrival of police vehicles, Plaintiff passed between two police vehicles on his way toward the house that his sister had just entered, in order to speak with his sister about the events of that evening. According to Plaintiff, none of the officers in either police car said anything to him as he moved to the house. Plaintiff reached the house and entered the kitchen in order to get a glass of water. Once he reached the kitchen, the front door was kicked open and Defendant DeCosmo immediately shot Plaintiff in the shoulder without any verbal warning. Much of Plaintiff's account is corroborated by the testimony of his sister, Derenda Brittingham, and Amirah Cotton, both of whom witnessed the shooting and testified to a similar series of events at their respective depositions.

According to Defendant Officer DeCosmo, upon the officers' arrival at Phillip Street, a woman told them that a black man in a dark coat with fur on the hood had just pointed a gun at her and her daughter and left down Phillips Street. The officers drove a short distance and found Plaintiff, who met the description. Pulling over about forty feet from Plaintiff, DeCosmo exited the vehicle and instructed Plaintiff to show his hands. Plaintiff stopped, looked at the officers, reached into his waistband to make an adjustment as if to move an object, and then ran toward one of the apartments on Phillip Street. Officer

DeCosmo chased Plaintiff into the apartment and observed Plaintiff who appeared to be hiding and assuming a "combat position" in the kitchen.  Officer DeCosmo identified himself as a police officer and repeatedly ordered Plaintiff to raise his hands, which Plaintiff did not do.  Plaintiff then came out from behind the pillar, at which point the officer saw his arm and shoulder begin to raise from his waistband.  Officer DeCosmo fired one round into Plaintiff's right shoulder.  Officer Kemp's testimony corroborates Defendant's account.

Plaintiff filed this complaint on January 12, 2007, asserting claims based upon the Fourth and Fourteenth Amendments to the United States Constitution, as well as upon New Jersey common law, against the City of Camden, the County of Camden, the Camden Police Department, the Camden County Prosecutor's Office, the State of New Jersey, and Officers Kemp and DeCosmo.  In its July 9, 2007 Opinion and Order [Docket Items 24 and 25], the Court granted the State's motion to dismiss all claims against it.  By stipulation of the parties [Docket Item 36], the claims against the City of Camden, the City of Camden Police Department, and Officer Kemp were dismissed on May 2, 2008.  Defendant thereafter filed a motion for summary judgment [Docket Item 57].

In its May 18, 2009 opinion on the motion for summary judgment, the Court denied Defendant's request for summary judgment on the issues of qualified immunity and state law

immunity under the New Jersey Tort Claims Act (NJTCA). The Court found that Plaintiff's evidence indicated the following: that Plaintiff may not have been fleeing the police; that DeCosmo could not reasonably have felt threatened by the alleged upward movement of Plaintiff's arm, because DeCosmo burst through the door and shot Plaintiff instantaneously; and that no officer ordered Plaintiff to stop or otherwise warned him of the imminent use of force. The Court concluded that there was therefore dispute over the critical facts used to assess whether DeCosmo behaved reasonably, and whether his actions constituted willful misconduct.

On June 1, 2009, Defendant filed a motion for reconsideration pursuant to Local Civil Rule 7.1(i) [Docket Item 68]. Defendant asks that the Court reconsider its judgment as to Defendant's NJTCA immunity defenses.

**III. DISCUSSION**

**A. Standard of Review**

Local Civil Rule 7.1(i) governs the Court's review of Defendant's motion for reconsideration. Rule 7.1(i) requires the moving party to set forth the factual matters or controlling legal authorities it believes the Court overlooked when rendering its initial decision. L. Civ. R. 7.1(i). Whether to grant a motion for reconsideration is a matter within the Court's

discretion, but it should only be granted where such facts or legal authority were indeed presented but overlooked.  See DeLong v. Raymond Int'l Inc., 622 F.2d 1135, 1140 (3d Cir. 1980), overruled on other grounds by Croker v. Boeing Co., 662 F.2d 975 (3d Cir. 1981); see also Williams v. Sullivan, 818 F. Supp. 92, 93 (D.N.J. 1993).  To prevail on a motion for reconsideration, the movant must show:

> (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . . [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

Max's Seafood Café ex rel. Lou-Ann, Inc., v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  To prevail under the third prong, the movant must show that "dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered."  P. Schoenfeld Asset Management LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 2001) (internal quotations and citations omitted).

    The standard of review involved in a motion for reconsideration is high and relief is to be granted sparingly. United States v. Jones, 158 F.R.D. 309, 314 (D.N.J.1994); Maldonado v. Lucca, 636 F. Supp. 621, 629 (D.N.J. 1986).

**B. Analysis**

    Though the Defendant does not explicitly identify any

specific material facts or controlling law that the Court overlooked, Defendant does generally identify five areas in which the court is implicitly alleged to have overlooked either controlling law or material facts.  The Court addresses each in turn.

i. Plaintiff's Flight

In assessing the objective reasonableness of Officer DeCosmo's actions, a critical element of his assertion of good faith immunity, the Court wrote that "Should the jury credit Plaintiff's testimony that no officer ordered him to stop or spoke to him in any way as he was walking to the Vaughn residence . . . the objective reasonableness of Officer DeCosmo's view that Plaintiff was attempting to flee would be cast seriously in doubt" [Docket Item 65 at 15].  The dispute over whether Plaintiff was attempting to flee is also relevant because the NJTCA provides that a public employee is entitled to absolute immunity for "any injury resulting from or caused by a law enforcement officer's pursuit of a person." N.J. Stat. Ann. § 59:5-2(b), (c) (West 2001).

Defendant seems to argue that the Court's use of the term "walking" indicates that the Court overlooked Plaintiff's testimony that he could not be sure whether he was running or walking and overlooked the fact that several witnesses say he

ran.  And yet, Defendant's own brief concedes that "whether Brittingham ran away from DeCosmo, or simply walked away as he suggests, is not material."  (Def. Br. Supp. Motion for Reconsideration 10.)  The disputed fact is whether the Plaintiff was fleeing, not the pace at which he was moving.  The question is whether, based on Plaintiff's account of the incident, a reasonable jury could conclude that the nature of the Plaintiff's behavior in context was not evasive.  See Illinois v. Wardlow, 528 U.S. 119, 124 (2000).

   The testimony the Court cited in finding the fact of Plaintiff's flight to be in dispute indicates that Plaintiff crossed between two police cars and followed his sister into their friend's apartment in plain view of the police without having received any order or communication from them.  According to Plaintiff's version of the facts, he was neither being pursued by the police nor doing anything to evade them.  He went to the apartment to speak with his sister about the fighting in which she had just been involved.  This is not an example of behavior that is typically seen as evasive, such as entering a crowd to escape officers, running in the opposite direction of the police upon their arrival, or ducking down an alley.  While no party disputes that Officer DeCosmo followed the Plaintiff, the question for the purposes of pursuit immunity is whether the Plaintiff was trying to avoid apprehension, not whether the

Defendant was following him.  See Tice v. Cramer, 133 N.J. 347, 356 (1993) ("The fair meaning of the words suggests a situation in which any person is trying to avoid apprehension by a police officer.")

Even if Defendant were correct that there was no dispute over the issue of Plaintiff's flight because Plaintiff is not certain that he walked, and the issue had been properly raised here by pointing out facts overlooked by the Court, the Court would still deny summary judgment on pursuit immunity because willful misconduct is not covered by pursuit immunity, see Lamont v. New Jersey, No. 04-2476, 2009 WL 483899, at *9 (D.N.J. Feb. 25, 2009), and there is a dispute over whether Defendant's actions amounted to willful misconduct.  See Part IV, infra.

ii. Upward hand/arm motion

Defendant maintains that his actions were reasonable because he feared for his safety as a result of Plaintiff's sudden movement upon Defendant's entry into the apartment.  The Court ruled that according to Plaintiff's evidence "DeCosmo could not reasonably have felt threatened by the alleged upward movement of Plaintiff's arm, because . . . an upward motion did not in fact take place - rather . . . DeCosmo burst through the door and shot Plaintiff instantaneously" [Docket Item 65 at 16-17].

Defendant does not identify any issue of law or fact that

the court overlooked on this issue.  Rather, Defendant merely renews his argument that there is no evidentiary support for Plaintiff's contentions.  Defendant is mistaken.  Plaintiff's testimony upon which the court relied in finding a factual dispute indicates that he did nothing to react to the officer's entry until after he was already shot.  (Pl.'s Dep. 75:12-75:17, April 16, 2008.)  The testimony that he did nothing to react is equivalent to testimony that he did not make a sudden movement of his hands.  It was this testimony, along with the corroborating testimony about the simultaneity of Defendant's entry and firing, upon which the Court relied in finding a factual dispute over whether the Plaintiff made any threatening movements in reaction to the Defendant's entry.  (Pl.'s Dep. 76:3-9; D. Brittingham Dep. 34:2-35:19, May 13, 2008; Cotton Dep. 35:12, April 30, 2007.)  Whether or not Plaintiff made a threatening movement is highly material as well as highly disputed; the jury must resolve this factual dispute before the Court could consider NJTCA immunity here.

iii. Lack of Warning

In Tennessee v. Garner, the Supreme Court held that "deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." Tennessee v. Garner, 471 U.S. 1, 11 (1985).  Thus, the absence of a warning makes the use

of deadly force less reasonable (if not completely unreasonable) if such a warning was feasible.  Plaintiff and two witnesses assert that Defendant did not issue a warning.  (Pl.'s Dep. 76:3-9; D. Brittingham Dep. 34:2-35:19; Cotton Dep. 35:12.)  The Court found that "in Plaintiff's version of the facts, which the Court must credit at this stage of the litigation, no warnings were given, further undermining the reasonableness of DeCosmo's use of force" [Docket Item 65 at 17].

Defendant asserts that the Court overlooked the issue of feasibility of the warning.  Defendant argues that under Plaintiff's version of the facts—that Defendant fired immediately upon entry into the apartment—a warning was not feasible.  However, Defendant does not state why the lack of time between entry and firing is relevant to whether a warning was feasible.  If and only if one assumes that firing the gun was necessary, it might follow that firing the gun instantly meant that there must have been no time to issue a warning.  But on summary judgment the court is required to give the Plaintiff the full benefit of his evidence, including reasonable inferences therefrom, and not to determine the result if only part of Plaintiff's evidence is credited by the jury.  Since Plaintiff and Plaintiff's witnesses contend that Plaintiff did not make any sudden movements that would present a threat to the officer (making his firing the gun necessary), Defendant's contention that the officer fired

11

immediately upon entry is irrelevant to the feasibility of warning.

iv. Standard of Willful Misconduct

In denying Defendant's motion for summary judgment on the claims for good faith immunity from state law claims under the NJTCA,[1] and so-called pursuit immunity from state law claims under the Act,[2] the Court found that there are genuine disputes of fact relevant to the question of whether the Defendant's behavior amounted to "willful misconduct" [Docket Item 65 at 27]. Therefore, the Court could not find on summary judgment that Defendant was entitled to good faith immunity and pursuit immunity under the NJTCA because such immunities do not apply to willful misconduct.

The Court found that "reckless disregard for safety"

---

[1] Under the Act, immunity is provided to "[a] public employee . . . [who] acts in good faith in execution or enforcement of any law." N.J. Stat. Ann. § 59:3-3. The Court found that good faith immunity under this provision was subject to the same "objective reasonableness" standard as qualified immunity, and thus the same disputes of fact on that issue foreclosed summary judgment on good faith immunity [Docket Item 65 at 25]. Additionally, willful misconduct also removes good faith immunity. Fielder, 141 N.J., at 129.

[2] The New Jersey Tort Claims Act also provides that a public employee is entitled to absolute immunity for "any injury resulting from or caused by a law enforcement officer's pursuit of a person." N.J. Stat. Ann. § 59:5-2(b), (c). Only a finding that the officer engaged in "willful misconduct" abrogates that immunity. Lamont v. New Jersey, No. 04-2476, 2009 WL 483899, at *9 (D.N.J. Feb. 25, 2009).

constituted willful misconduct [Docket Item 65 at 27].  The Court further found that if the jury credited Plaintiff's evidence it could conclude that DeCosmo exhibited a reckless disregard for safety by bursting into the apartment and shooting Plaintiff instantaneously without issuing a warning or giving Plaintiff the opportunity to comply with his directives.

     Defendant makes no specific allegations that the court overlooked some point of law or material fact on this issue.  Instead, Defendant attempts to use the motion for reconsideration as an opportunity to offer a new definition of willful misconduct in an effort to eliminate the relevance of the dispute over whether Officer DeCosmo exhibited reckless disregard for safety.  In Defendant's original motion for summary judgment, Defendant argues that willful misconduct "requires much more than mere negligence," and falls "somewhere on the continuum between simple negligence and the intentional infliction of harm."  (Def. Br. Supp. Motion for Summ. J. 34.)  These  statements of law are consistent with the Court's conclusion that "reckless disregard for safety" constitutes willful misconduct— indeed, all of the terms come from the discussion of willful misconduct in <u>Fielder v. Stonack</u>, 141 N.J. 101 (1995).  Defendant's position in the motion for summary judgment was that "even if the Court considers DeCosmo's shooting of plaintiff an act of negligence . . . DeCosmo cannot be held liable absent some showing of willful

13

misconduct." (Def. Br. Supp. Motion for Summ. J. 35.)

In the motion for reconsideration, Defendant now argues that willful misconduct requires much more specific findings of wrongdoing. Citing another part of <u>Fielder</u>, Defendant now argues that willful misconduct "is ordinarily limited to a knowing violation of a specific command by a superior, or a standing order, that would subject the officer to discipline," and that Plaintiff's failure to present evidence about these commands and orders means Defendant is entitled to summary judgment. (Def. Br. Supp. Motion for Reconsideration 9.) Defendant fails to note the explicitly limited reach of this language in <u>Fielder</u>: The Supreme Court of New Jersey stated with respect to this more specific definition of willful misconduct that it does "not presume to define willful misconduct in any context other than police <u>vehicular</u> pursuit under 5-2b(2)." <u>Id.</u> at 124 (emphasis added). But even if this Court were persuaded that the limited holding in <u>Fielder</u> with regard to specific commands and standing orders ought to be extended to this case, this Court cannot ordinarily entertain legal authority—especially merely persuasive as opposed to controlling legal authority—on a motion for reconsideration that was not presented in the motion for summary judgment. <u>See Williams v. Sullivan</u>, 818 F. Supp. 92, 93 (D.N.J. 1993). Among other reasons, to do so would deprive the Plaintiff an opportunity to properly respond to Defendant's

characterization of the law.  Moreover, it is not clear that this new standard would change the result anyway, since it seems unlikely that there is no standing order or specific command regarding use of deadly force governing the conduct in which Plaintiff alleges Defendant engaged.

v. Misinterpretation of Assault and Battery

Finally, Defendant argues that the Court misinterprets the law of assault and battery in its holding with regard to entity liability.  On the issue of entity liability, the Court held that the only way that Defendant would be liable is if his conduct amounted to willful misconduct, and it therefore follows that the only way the entity would be vicariously liable is if Defendant's conduct amounted to willful misconduct [Docket Item 65 at 25-26.] Willful misconduct is exactly the category of conduct to which respondeat superior does not apply.  Therefore, in the case of public entity liability for those officers protected by immunity from conduct not amounting to willful misconduct, the theory of respondeat superior will never apply.

Defendant simply misunderstands the Court's holding with regard to entity liability, apparently believing the Court to have held that willful misconduct is an element of battery.  The Court did not so hold.  It held that the only kind of battery for which Defendant could be held responsible is battery that amounts

15

to willful misconduct, and that the CCPO cannot be held vicariously responsible for such willful misconduct.

### III. CONCLUSION

For the reasons explained above, the Court will deny Defendant's motion for reconsideration. The accompanying Order is entered.

**September 23, 2009**          **s/ Jerome B. Simandle**
Date          JEROME B. SIMANDLE
         United States District Judge